IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CASEY DUNN, Individually and on
Behalf of G.D., a minor; and
THOMAS DUNN**                                                                                    **PLAINTIFFS**

v.                              No. 3:23CV00224 JM

**ACTIVISION BLIZZARD, INC.;
INFINITY WARD, INC.;
TREYARCH CORP.; SLEDGEHAMMER
GAMES, INC.; MICROSOFT CORPORATION;
EPIC GAMES, INC.; ELECTRONIC ARTS, INC.; UBISOFT
DIVERTISSEMENTS INC. d/b/a UBISOFT MONTREAL;
UBISOFT ENTERTAINMENT; NINTENDO OF AMERICA, INC.;
GOOGLE LLC; and JANE & JOHN DOES I-XX**                           **DEFENDANTS**

**ORDER**

Pending is the motion to compel arbitration filed on behalf of Defendant Electronic Arts Inc.("EA"). (Docket #86). Plaintiffs have filed a response and EA has filed a reply.

I. <u>Background</u>

Plaintiffs, G.D., a minor, and his parents Casey Dunn and Thomas Dunn filed suit against Electronic Arts Inc. ("EA") and others due to alleged harm experienced by G.D., including video game addiction (also called internet gaming disorder) and brain damage, resulting from G.D.'s use of Defendants' video game products. Separate Defendant EA is a global leader in digital interactive entertainment. Among other things, EA serves as the creative developer and publisher of many video games, including the Battlefield franchise of games.

II. <u>Discussion</u>

EA argues that Plaintiffs G.D. and Casey Dunn's claims should be sent to arbitration and

Thomas Dunn's claims should be stayed. EA asserts that to play any EA game, including the Battlefield franchise, a user must first accept EA's User Agreement which contains a binding arbitration provision and an agreement to delegate issues of arbitrability to an arbitrator. Plaintiffs admit that to play Battlefield, EA requires users to have an EA account and to agree to EA's User Agreement. Further, Plaintiffs do not dispute that there are two EA accounts associated with their family. Plaintiffs argue that G.D. created their EA accounts on his own and without parental involvement and they disaffirm the agreements. Accordingly, Plaintiffs argue that there is not a valid agreement to arbitrate.

When creating an EA account, EA requires that minors under the age of 13 create an EA "child" account and have parental approval to play. The two accounts used by G.D. to play the Battlefield games were adult accounts. One account is linked to a gmail e-mail address which contains Plaintiff Casey Dunn's name and the second is an outlook e-mail account which also identifies Plaintiff Casey Dunn. The gmail account was created in August 2021 by a user on an Xbox console. At the time, G.D. would have been nine or ten years old. However, the date of birth provided to EA upon the creation of the account lists the user's birthday in 1989. The outlook account created in mid-2023 also reflects a 1989 birthdate.

Upon registering the gmail EA account in 2021 the user had to affirm that he or she had "read and accept[ed] the User Agreement and EA's Privacy and Cookie Policy." During the set-up process, the user submitted the gmail e-mail address which generated a welcome message sent to that address to confirm the creation of a new EA account and to provide links to resources. The user would be prompted to pick a password and a public ID. The account creation would then be complete and EA would send a confirmation message to the e-mail address provided. The same process would have occurred when setting up the outlook EA account in 2023. Following the

2

initial creation of the EA account in 2021, the user or users have agreed to the terms of the EA's User Agreement at least six additional times in the following years.  In each instance, the user would have been prompted to review and accept EA's User Agreement and would have been required to indicate that they had read and accepted the User Agreement before proceeding. Further, the user of the gmail account has logged in to play EA games repeatedly including since the filing of Plaintiffs' complaint.

The EA User Agreement includes provisions that make parents responsible for the acts of children under 18 years of age when playing EA's games.  It advises parents to familiarize themselves with the available parental controls on devises. The User Agreement also requires that a user provide "truthful and accurate information," and specifies that "[y]ou must be at least 13 years of age . . . to create and EA account."

In this case, the EA User Agreement contains an arbitration provision which, with exceptions not relevant here, requires users to arbitrate all disputes arising out of the agreement. The agreement is available online and it is displayed or linked each time the user accepts it. Users must affirmatively accept the terms of the agreement in order to play EA games on any console.  The agreement governs users' "access and use of products, content and services offered by EA and its subsidiaries" and it states in all caps, that "BY USING EA SERVICES, YOU AGREE TO THESE TERMS.  IF YOU DO NOT AGREE, DO NOT INSTALL OR USE THE EA SERVICES."

Section 15 of the EA User Agreement contains the arbitration provision and is titled "Dispute Resolution by Binding Arbitration."   The agreement provides:

- Users and EA "expressly waive the right to a trial by jury."
- The dispute-resolution provisions apply to users' and EA's "agents, employees,

subsidiaries, predecessors, successors, beneficiaries and assigns."

● The provisions apply broadly to "[a]ll disputes, claims or controversies arising out of or relating to this Agreement, any EA service and its marketing, or the relationship between you and EA, including the validity, enforceability, and scope of this Section 15. . . " requiring all such disputes to be "determined exclusively by binding arbitration."  The User Agreement also states that the American Arbitration Association's Consumer Arbitration Rules will apply to any arbitration, with modifications.  All relevant versions of the User Agreement—from August 2021 to the present—contain substantively the same arbitration provisions.

Plaintiffs challenge EA's motion to compel arbitration arguing that EA does not have a valid, enforceable arbitration agreement with Plaintiffs Casey Dunn and G.D.  Additionally, even if an agreement existed, Plaintiffs argue that it would not be enforceable because the arbitration clause is unconscionable.  Finally, Plaintiffs contend that this Court should consider their arguments regarding the enforceability of the arbitration provision because the delegation clause cannot apply until there is a finding of a valid, enforceable contract.

If there is an arbitration agreement governing the parties' dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co*., 363 U.S. 574, 582, (1960)). "When deciding whether

the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The parties agree that the Court should apply Arkansas law to the question of whether a contract exists.

"[T]he essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005). "A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Id.* at 80 (citing *Williamson v. Sanofi Winthrop Pharm., Inc.*, 60 S.W.3d 428 (Ark. 2001).

The online contracts like the one at issue here are treated no differently than any other contract.  *See, Leeper v. Altice U.S.A., Inc*, ___ F.3d ___, 2024 WL 1234947, at *4 (W.D. Ark. Mar. 22, 2024). Further, Courts applying Arkansas law routinely find "clickwrap" agreements valid and enforceable.  *See Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 821 & n.1 (E.D. Ark. 2019) ("A clickwrap agreement is an assent process where a user is required to click "I agree" before completing a purchase but is not required to actually view or scroll through the contract or terms and conditions.").  In Arkansas minors can enter into contracts and those agreements are "not void but voidable." *Haydon v. Hillhouse*, 270 S.W.2d 910, 911 (Ark.

1954).  Finally, competence is presumed and the burden of proving incompetence is with the Plaintiffs. *See Union Nat'l Bank of Little Rock v. Smith,* 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts.").

When considering a motion to compel arbitration, "the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Markets Live, Inc.,* 20 F.4th 400, 403 (8th Cir. 2021).  The Court's "task in this case to determine whether [the parties] had an agreement to arbitrate and, if so, what that agreement covered." *See Foster v. Walmart, Inc.,* 15 F.4th 860, 862 (8th Cir. 2021).  The FAA provides for a summary-trial procedure only where the existence of an arbitration agreement is factually disputed.  9 U.S.C. §4 (If the making of the arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof.").  Here the existence of the arbitration agreement is not factually disputed, there is no genuine issue of fact as to the making of the contract.

Plaintiffs do not dispute that G.D. created the user accounts associated with the Battlefield game.  Plaintiffs argue that the agreement is not valid because G.D. lacked the capacity and competency to manifest assent and Casey Dunn and Thomas Dunn never assented to or accepted EA's User Agreement.  Alternatively, they argue the contract is unconscionable.  Because G.D.'s contract is voidable, not void under Arkansas law, G.D.'s infancy and alleged lack of competency do not nullify his agreement. Further, because of the User Agreement's broad delegation clause, the plaintiffs' contract enforceability challenges including the parents' disaffirmation of the agreement go to an arbitrator.  *See Rent-A-Center v. Jackson,* 561 U.S. 63 (2010).  "The Supreme Court has made clear that 'unless the

challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)).

Plaintiff Casey Dunn is bound by the User Agreement under the doctrine of apparent authority. Plaintiffs do not deny that the EA Accounts were created with Casey Dunn's email addresses and birthdate, that the creator of the accounts agreed to an arbitration agreement that covers this dispute or that her credit card was used to make Xbox purchases. She also does not deny that EA sent e-mail confirmations about the creation of the account to her e-mail addresses. "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Terra Land Servs., Inc. v. McIntyre*, 2019 Ark. App. 118, 15, 572 S.W.3d 424, 433 (2019). Here, EA was justified in believing that the user of the EA account possessed the authority to agree to the user agreement. There was no reason for EA to question whether the user of the account was anyone other than Casey Dunn or someone to whom Casey Dunn gave authority. *See Heidbreder v. Epic Games, Inc*., 438 F. Supp. 3rd 591(E.D.N.C. 2020) (finding no genuine issue of material fact as to the apparent authority of the minor child to bind his parent where the account was personalized and associated with specific names and e-mail addresses).

The Court finds that a valid arbitration agreement exists and the Plaintiffs G.D and Casey Dunn's claims fall within the substantive scope of the arbitration agreement.

III.  Conclusion

For these reasons, the Court finds that EA's motion to compel arbitration of Plaintiffs G.D. and Casey Dunn must be granted. The remaining claims of Thomas Dunn against this Defendant will be stayed.

IT IS SO ORDERED this 23rd day of September, 2024.

James M. Moody Jr.
United States District Judge