IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CASEY DUNN, Individually and on
Behalf of G.D., a minor; and
THOMAS DUNN                                                              PLAINTIFFS

v.                              No. 3:23CV00224 JM

ACTIVISION BLIZZARD, INC.;
INFINITY WARD, INC.;
TREYARCH CORP.; SLEDGEHAMMER
GAMES, INC.; MICROSOFT CORPORATION;
EPIC GAMES, INC.; ELECTRONIC ARTS, INC.; UBISOFT
DIVERTISSEMENTS INC. d/b/a UBISOFT MONTREAL;
UBISOFT ENTERTAINMENT; NINTENDO OF AMERICA, INC.;
GOOGLE LLC; and JANE & JOHN DOES I-XX                                    DEFENDANTS

**ORDER**

Pending is a motion to compel arbitration filed on behalf of Defendant Nintendo of America Inc. ("Nintendo"). (Docket #107). Plaintiffs have filed a response and Nintendo has filed a reply.

I.   Background

Plaintiffs, G.D., a minor, and his parents Casey Dunn and Thomas Dunn filed suit against Nintendo and others due to alleged harm experienced by G.D., including video game addiction (also called internet gaming disorder) and brain damage, resulting from G.D.'s use of Defendants' video game products. Nintendo markets and distributes in the United States the Nintendo Switch console, a video game console that plays games created by Nintendo and other third-party licensees. Plaintiffs' claims against Nintendo arise from G.D.'s alleged use of video games available on the Nintendo eShop and playable on the Nintendo Switch.

II.     Discussion

Nintendo argues that Plaintiffs' claims should be compelled to arbitration. Nintendo offers free accounts to users of its products and services, called "Nintendo Accounts." A Nintendo Account is necessary to access Nintendo's online services and features. For instance, the Nintendo eShop, an online marketplace accessible from the Nintendo Switch, where users can download and purchase authorized games, is only accessible with a Nintendo Account. To download and play games from Nintendo eShop the user must have a Nintendo Account and agree to the Nintendo Account User Agreement ("User Agreement"). Nintendo contends that the User Agreement contains a binding arbitration provision and an agreement to delegate issues of arbitrability to an arbitrator. Plaintiffs admit that Nintendo requires users to agree to create a Nintendo Account. Further, Plaintiffs do not dispute that there are two Nintendo accounts associated with their family. Plaintiffs argue that G.D. created the Nintendo accounts on his own and without parental involvement and they disaffirm the agreements. Accordingly, Plaintiffs argue that there is not a valid agreement to arbitrate.

When a user creates a profile on a Nintendo Switch console, they are advised they need to link the Nintendo Switch to a Nintendo Account to "use various online features." If the user opts to create a Nintendo Account, any user who is under thirteen is advised in prominent bright red letters to "have a parent or guardian look at this," and to provide a "parent or guardian's e-mail address." Otherwise, Nintendo sends the provided email address a link to access the Nintendo Account creation page. That page requires the user to identify whether the account is for themselves or for a child, and to identify their date of birth. If the user identifies a date of birth that reveals they are under thirteen, they are again prevented from creating an account, and again informed in bright red letters that they must have a parent or guardian complete the next steps.

If the user is of a sufficient age, the user must affirmatively check a box confirming they "agree to the Nintendo Account User Agreement." Before deciding whether to agree or to stop the account-creation process, a user can read and review the entire User Agreement by selecting a visually distinguishable blue and underlined hyperlink. If a user selects the hyperlink, the User Agreement is displayed in its entirety. The first provisions of the User Agreement again address the necessity of parental approval for any account associated with a minor. The User Agreement begins: "THIS IS AN IMPORTANT AGREEMENT THAT APPLIES TO YOUR USE OF THE NINTENDO ACCOUNT SERVICES!" It also instructs that "[i]f you are under the age of 18 (or the age of majority where you live), STOP! You must get your parent or legal guardian to read and accept this Agreement on your behalf." A few lines below this initial admonition, the User Agreement includes the following explanation, in all capital letters:

> NOTE: TO THE FULLEST EXTENT PERMITTED BY LAW, THIS AGREEMENT CONTAINS A BINDING INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER PROVISION IN SECTION 16 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT AND WITH RESPECT TO ANY "CLAIM" (AS DEFINED IN SECTION 16) BETWEEN YOU AND NINTENDO. YOU HAVE A RIGHT TO OPT OUT OF THE BINDING ARBITRATION AND CLASS ACTION WAIVER PROVISION PROVIDED THAT YOU FOLLOW THE PROCEDURE SET FORTH IN SECTION 16.

The account-creation screen will not let a user proceed without affirmatively checking the box confirming their agreement to the User Agreement. And to further verify that agreement, the "Submit" button that a user selects to move forward and create their account remains grayed out and inactive until the user checks the box. Once the user checks the box agreeing to the User Agreement, the "Submit" button turns red and activates so that the user can select "Submit" and finish creating their account. If the user hits "Submit," the account is created and Nintendo provides the user with a summary of the account's information, including the email address and

date of birth associated with the account.

Section 16 of the User Agreement, entitled "Dispute Resolution; Binding Arbitration; Class Action Waiver," begins by requesting that users "PLEASE READ THIS CAREFULLY. IT AFFECTS YOUR RIGHTS."  It then states: "BY ENTERING INTO THIS AGREEMENT, YOU AND NINTENDO EXPRESLY WAIVE THE RIGHT TO TRIAL BY JURY[.]" And it continues to provide that an "arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Claims" and that an "arbitrator's award shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction."

In defining what constitutes a "Claim," Section 16 provides that the term encompasses "all disputes or claims arising out of or relating to the Nintendo Account Services or this Agreement, including its formation, enforceability, performance, or breach." The User Agreement defines "Nintendo Account Service(s)" as "the services, applications, software, content, and data we make available to you through your Nintendo Account, including, for example, the Nintendo Switch Parental Controls application, video games, and add-on content." Users have "the right to opt out of the provisions of this Section 16 by sending written notice of your decision to opt out" to Nintendo "within 30 days from the date you created your Nintendo Account. Such notice must include the name of each person opting out, contact information, and the email address registered to your Nintendo Account. . . . If you do not send such notice, then you agree to be bound by this Section 16."  Additionally, the User Agreement explains that, if a user utilizes Nintendo Account Services—like the Nintendo eShop—to access third-party services—like Fortnite—then Nintendo is not responsible for the third-party services. Section 4 states in part:

> The Nintendo Account Services include third party services, applications, software, content, and data ("Third Party Services"), as well as links to websites that contain such Third Party Services. Nintendo does not own, control, endorse, review or monitor the Third Party Services, makes no representation or warranties of any kind

4

regarding the Third Party Services, and is not responsible for any Third Party Services. If you access or use any Third Party Services, you do so at your own risk. Your use of any Third Party Services may be subject to additional terms imposed by the third party that operates such Third Party Services.

On June 17, 2023, Nintendo records indicate that an account associated with the gmail e-mail address containing Plaintiff Casey Dunn's name was created and accepted the User Agreement (herein after referred to as the "Caseydunn Account").   The accountholder of this account entered a date of birth of August 21, 2002, making them age 20 at the time of the account creation.  The Nintendo Switch console associated with the Casey Dunn account is also associated with a second Nintendo Account.  The second account created August 27, 2023 has another gmail e-mail address which contains Plaintiff Casey Dunn's name but is different from the first (herein after referred to as the "Dunncasey Account").  This accountholder entered a date of birth of December 4, 1989.  Both accounts accepted the User Agreement and no opt outs were received. These accounts have been accessed through at least February 21, 2024.

Plaintiffs challenge Nintendo's motion to compel arbitration arguing that it does not have a valid, enforceable arbitration agreement with Plaintiffs Casey Dunn, Thomas Dunn and G.D. Additionally, even if an agreement existed, Plaintiffs argue that it would not be enforceable because the arbitration clause is unconscionable.  Finally, Plaintiffs contend that this Court should consider their arguments regarding the enforceability of the arbitration provision because the delegation clause cannot apply until there is a finding of a valid, enforceable contract.

If there is an arbitration agreement governing the parties' dispute, it is governed by the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1 et seq. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *PRM Energy Sys., Inc. v.*

*Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). Nevertheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, (1960)). "When deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 500 (8th Cir. 2007) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The Court will apply Arkansas law to the question of whether a contract exists.[1]

"[T]he essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005). "A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent. We keep in mind two legal principles when deciding whether a valid contract was entered into: (1) a court cannot make a contract for the parties but can only construe and enforce the contract that they have made; and if there is no meeting of the minds, there is no contract; and (2) it is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Id.* at 80 (citing *Williamson v. Sanofi Winthrop Pharm., Inc.*, 60 S.W.3d 428 (Ark. 2001).

The online contracts like the one at issue here are treated no differently than any other contract. *See, Leeper v. Altice U.S.A., Inc*, 722 F.Supp.3d 893 (W.D. Ark. 2024). Further,

---

[1] Even if Washington law applies as argued my Nintendo, on the issue of contract formation, the same elements would apply.

Courts applying Arkansas law routinely find "clickwrap" agreements valid and enforceable. *See Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 821 & n.1 (E.D. Ark. 2019) ("A clickwrap agreement is an assent process where a user is required to click "I agree" before completing a purchase but is not required to actually view or scroll through the contract or terms and conditions."). In Arkansas minors can enter into contracts and those agreements are "not void but voidable." *Haydon v. Hillhouse*, 270 S.W.2d 910, 911 (Ark. 1954).[2] Finally, competence is presumed and the burden of proving incompetence is with the Plaintiffs. *See Union Nat'l Bank of Little Rock v. Smith,* 240 Ark. 354, 356, 400 S.W.2d 652, 653 (1966) ("There is a presumption of law that every person is sane, fully competent, and capable of understanding the nature and effect of her contracts.").[3]

When considering a motion to compel arbitration, "the district court treats the motion akin to a motion for summary judgment, viewing the record in the light most favorable to the nonmovant." *Duncan v. Int'l Markets Live, Inc.,* 20 F.4th 400, 403 (8th Cir. 2021). The Court's "task in this case to determine whether [the parties] had an agreement to arbitrate and, if so, what that agreement covered." *See Foster v. Walmart, Inc.,* 15 F.4th 860, 862 (8th Cir. 2021). The FAA provides for a summary-trial procedure only where the existence of an arbitration agreement is factually disputed. 9 U.S.C. §4 (If the making of the arbitration agreement is in issue, "the court shall proceed summarily to the trial thereof."). Here the existence of the arbitration agreement is not factually disputed, there is no genuine issue of

---

[2] In Washington "contracts entered into by minors [are also] voidable, not void." *N.Y. Life Ins. Co., v. Mitchell*, 528 P.3d 1269, 1280 (Wash. 2023).
[3] Accord *Rushing ex rel. Estate of Coon v. Franklin Hills Health & Rehabilitation*, 179 Wash.App. 1018 (2014) (" In Washington, a person is presumed competent to enter into an agreement.").

fact as to the making of the contract.

Plaintiffs do not dispute that G.D. created the user accounts associated with the two Nintendo accounts. Plaintiffs argue that the agreement is not valid because G.D. lacked the capacity and competency to manifest assent and Casey Dunn and Thomas Dunn never assented to or accepted the agreements. Alternatively, they argue the contract is unconscionable. Because G.D.'s contract is voidable, not void under Arkansas law, G.D.'s infancy and alleged lack of competency do not nullify his agreement. Further, because of the broad delegation clause, the plaintiffs' contract enforceability challenges including the parents' disaffirmation of the agreement go to an arbitrator. *See Rent-A-Center v. Jackson,* 561 U.S. 63 (2010). "The Supreme Court has made clear that 'unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.'" *Benchmark Ins. Co. v. SUNZ Ins. Co.,* 36 F.4th 766, 772 (8th Cir. 2022) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006)).

Plaintiff Casey Dunn is bound by the Nintendo User Agreement under the doctrine of apparent authority. Plaintiffs do not deny that the Nintendo accounts were created by G.D. with Casey Dunn's email addresses. The creator of the accounts agreed to the User Agreement which contained an arbitration agreement that covers this dispute. Further, by agreeing to the User Agreement G.D. represented to Nintendo that he had his parents' consent. "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Terra Land Servs., Inc. v. McIntyre*, 2019 Ark. App. 118, 15, 572 S.W.3d

424, 433 (2019). Here, Nintendo was justified in believing that the user of the accounts possessed the authority to agree to the User Agreement. There was no reason for Nintendo to question whether the user of the accounts was anyone other than Casey Dunn or someone to whom she gave authority. *See Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3rd 91(E.D.N.C. 2020) (finding no genuine issue of material fact as to the apparent authority of the minor child to bind his parent where the account was personalized and associated with specific names and e-mail addresses).

The Court finds that a valid arbitration agreement exists and the Plaintiffs G.D. and Casey Dunn's claims fall within the substantive scope of the arbitration agreement. The remaining claims of Thomas Dunn against this Defendant will be stayed.

III.    Conclusion

For these reasons, the Court finds that Nintendo's motion to compel arbitration must be granted. The case is stayed as to Plaintiffs' claims against Nintendo pending the completion of arbitration.

IT IS SO ORDERED this 7th day of January, 2025.

James M. Moody Jr.
United States District Judge